## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID L. GAILEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 04-301J |
| | ) |
| JO ANNE B. BARNHART, | ) JUDGE GIBSON |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
| Defendant. | ) |

# Memorandum Opinion and Order of Court

**GIBSON, J.**

This matter comes before the Court on the parties' cross-motions for summary judgment and the briefs in support thereof. (Document Nos. 7-8, 10-11). This Court has jurisdiction of this matter pursuant to 42 U.S.C. § 405(g).

David L. Gailey (hereinafter "Plaintiff") initially filed for Disability Insurance Benefits (hereinafter "DIB") on June 17, 1999. R. p. 72. After the claim was denied by the state agency, a hearing was held on April 13, 2000, before Administrative Law Judge John T. Clark. R. p. 72. In a decision dated July 25, 2000, Judge Clark determined that the Plaintiff's "past relevant work as a welder, a carpenter, and a mechanic did not require the performance of work-related activities precluded by his residual functional capacity" and that the Plaintiff was therefore not statutorily disabled. R. p. 77. For purposes of the instant case, that determination remains final.

On March 28, 2001, the Plaintiff filed for DIB and Supplemental Security Income (hereinafter "SSI"). R. p. 83. After the state agency denied the claims, a hearing was held, at the Plaintiff's request, before Administrative Law Judge Melvin D. Benitz on September 6, 2002. R. p. 83. In a decision dated September 27, 2002, Judge Benitz concluded that although the Plaintiff was unable to perform his past relevant work, he was capable of making an adjustment to work existing "in significant numbers in the

1

local and national economies." R. p. 91. Consequently, Judge Benitz determined that the Plaintiff was not disabled, for purposes of the Social Security Act, as of September 27, 2002. R. p. 91.

The Plaintiff filed for DIB again on November 29, 2002, alleging disability as of September 30, 1997, due to degenerative disc disease, bursitis, and mental problems. R. pp. 17, 145-151. The state agency denied the claim on April 25, 2003, and the Plaintiff filed a timely request for a hearing on May 5, 2003. R. p. 16. The hearing was held on December 3, 2003, before Administrative Law Judge John J. Mulrooney (hereinafter "ALJ"). R. p. 30. The Plaintiff appeared and testified at the hearing, as did Mark Heckman, an impartial vocational expert. R. p. 30. In a decision dated January 23, 2004, the ALJ determined that there was no good cause for reopening Judge Benitz's decision of September 27, 2002, and that his consideration of the instant matter would be limited to the question of whether the Plaintiff was disabled at any time between September 28, 2002, and March 31, 2003. R. pp. 16-17. The Plaintiff's insured eligibility period had expired thereafter.

The ALJ concluded that the Plaintiff had "the residual functional capacity to engage in a range of light work that involve[d] occasional postural maneuvers, such as balancing, stooping, kneeling, crouching, crawling or climbing; occasional pushing and/or pulling with the upper extremities, to include the operation of hand levers; no more than simple, routine, repetitive tasks, not performed in a production or quota based environment; only simple, work related decisions; relatively few work place changes and no more than occasional interaction with supervisors, coworkers or the general public." R. p. 24. Although the ALJ determined that the Plaintiff was unable to perform any of his past relevant work, he concluded that the Plaintiff retained the capacity to perform light work as a routing clerk or a coupon redemption clerk, or sedentary work as a produce inspector, a surveillance system monitor, or an ampoule sealer. R. p. 24. Mr. Heckman's testimony established that these jobs existed in significant numbers in the national economy for purposes of 42 U.S.C. § 423(d)(2)(A). R. pp. 62-67. Accordingly, the ALJ determined that the Plaintiff was not statutorily disabled. R. p. 24. The Appeals Council subsequently denied the Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner of Social Security (hereinafter "Commissioner") regarding the instant case. R. pp. 6-8. The Plaintiff filed a complaint in this matter on December 3, 2004, and the

2

Commissioner filed an answer on January 24, 2005. The Plaintiff and the Commissioner filed cross-motions for summary judgment on April 7, 2005, and May 13, 2005, respectively.

A district court's review of the administrative determinations of the Commissioner is governed by the standard of whether the record contains substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842, 853 (1971). Substantial evidence is more than just a scintilla of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citations omitted); *see also, Stewart v. Secretary*, 714 F.2d 287 (3d Cir. 1983). In discussing this standard of review, the Third Circuit has stated:

> This oft-cited language is not, however, a talismanic or self-executing formula for adjudication; rather, our decisions make clear that determination of the existence *vel non* of substantial evidence is not merely a quantitative exercise. A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence–particularly certain types of evidence (e.g., that offered by treating ph ysicians)–or if it really constitutes not evidence but mere conclusion. See *id.* at 706 ("'Substantial evidence' can only be considered as supporting evidence in relationship to all the other evidence in the record.") (footnote omitted). The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham.

*Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). *De novo* review of the facts is prohibited and deference must be given to the Commissioner's findings unless there is an absence of substantial evidence to support such findings in the record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191 (3d Cir. 1986); 42 U.S.C. § 405(g).

When resolving the issue of whether a claimant is disabled and therefore entitled to DIB or SSI benefits, the Commissioner uses a five-step sequential evaluation process. The U.S. Supreme Court recently summarized this five-step process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity."   §§

3

404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 379-380, 157 L.Ed.2d 333, 339-340 (2003) (footnotes omitted).

In this case, the ALJ decided that the Plaintiff was not disabled at the fifth stage of the sequential evaluation process. R. p. 24. In support of his motion for summary judgment, the Plaintiff advances three arguments. His first argument is that the decision of the Commissioner is not supported by substantial evidence and should, therefore, be reversed pursuant to this Court's authority under 42 U.S.C. § 405(g).

As a preliminary matter, the Court must address the question of whether the Court will consider as evidence a medication summary report dated February 4-5, 2004. R. p. 277. The report was completed by Ms. M.L. Letter, a staff member at Cambria County Mental Health/Mental Retardation, which also employs the Plaintiff's psychiatrist, Dr. Richard Cassone. R. p. 277. The Plaintiff specifically refers to this report in the Summary of Medical Evidence portion of his brief, and he incorporates it into his argument portion by reference. Br. for Plaintiff pp. 9, 12-13. The Commissioner contends that the Court cannot consider this report, for purposes of determining whether her decision is supported by substantial evidence, because it was not presented to the ALJ. Br. for Defendant pp. 13-14. This report was submitted to the Appeals Council and was made a part of the administrative record in this case. R. p. 9. The report indicates that the Plaintiff suffered from a mood

4

disorder due to pain and degenerative disc disease. R. p. 277. It also records findings that the Plaintiff was experiencing difficulties such as family dysfunction, financial problems, and unemployment, and that his Global Assessment of Functioning (GAF) level was only 50. R. p. 277.

While there is a split of authority on this issue, the resolution of the question for purposes of the instant case is controlled by the decision of the U.S. Court of Appeals for the Third Circuit in *Matthews v. Apfel*, 239 F.3d 589 (3d Cir. 2001).[1] "[A]lthough evidence considered by the Appeals Council is part of the administrative record on appeal, it cannot be considered by the District Court in making its substantial evidence review once the Appeals Council has denied review." *Matthews*, 239 F.3d at 593. In *Matthews*, the Court of Appeals construed the sixth sentence of 42 U.S.C. § 405(g) to preclude consideration of such evidence absent a showing of good cause on the part of the claimant as to why it was not initially presented to the ALJ. *Matthews*, 239 F.3d at 592-593.[2] The "good cause" exception to the general exclusionary rule exists because of the statutory mandate. The exclusionary rule is inapplicable where the Appeals Council accepts the case for review and makes "a decision on

---

[1]Compare *Higginbotham v. Barnhart*, 405 F. 3d 332, 336-337 (5th Cir. 2005), *Perez v. Chater*, 77 F. 3d 41, 45 (2nd Cir. 1996), *O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994), *Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993), *Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992), and *Wilkins v. Secretary of DHHS*, 953 F.2d 93, 96 (4th Cir. 1991) (*en banc*), (holding that evidence not submitted to the ALJ but later submitted to the Appeals Council, which later denies review, should be considered by the District Court), with *Matthews v. Apfel*, 239 F.3d 589, 593-594 (3d Cir. 2001), *Falge v. Apfel*, 150 F.3d 1320, 1322-1323 (11th Cir. 1998), cert. denied, 525 U.S. 1124, 142 L.Ed.2d 905, 119 S.Ct. 907 (1999), *Cotton v. Sullivan*, 2 F.3d 692, 695-696 (6th Cir. 1993), and *Eads v. Secretary of DHHS*, 983 F.2d 815, 817-818 (7th Cir. 1993), (holding that evidence not presented to the ALJ but later submitted to the Appeals Council, which later denies review, should not be considered by the District Court unless the claimant shows good cause for not having submitted the evidence to the ALJ). *See also Mills v. Apfel*, 244 F.3d 1, 4-6 (1st Cir. 2001), (holding that an ALJ cannot be faulted for failing to consider unavailable evidence, but that "an Appeals Council refusal to review the ALJ may be reviewable where it gives an egregiously mistaken ground for its action.").

[2]The sixth sentence of 42 U.S.C. § 405(g) states as follows: "The court may, on motion of the Commissioner of Social Security made for good cause shown before the Commissioner files the Commissioner's answer, remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security, and it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Commissioner of Social Security shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm the Commissioner's findings of fact or the Commissioner's decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and, in any case in which the Commissioner has not made a decision fully favorable to the individual, a transcript of the additional record and testimony upon which the Commissioner's action in modifying or affirming was based."

the merits, based on all the evidence before it, which then becomes the decision reviewed in the courts." *Matthews*, 239 F.3d at 593, quoting *Eads v. Secretary of Health and Human Services*, 983 F.2d 815, 817 (7th Cir. 1993). Furthermore, in *Reefer v. Barnhart*, 326 F.3d 376 (3d Cir. 2003), the Court of Appeals recognized that evidence not presented to the ALJ may be considered by the District Court for other purposes, such as in determining whether the ALJ failed to adequately develop the record in a case involving a *pro se* litigant. *Reefer*, 326 F.3d at 378, n. 2.

In the instant case, the Appeals Council denied the Plaintiff's request for review. R. pp. 6-8. Consequently, the evidence was not factored into the Commissioner's final decision. *Matthews*, 239 F.3d at 593; *Eads*, 983 F.2d at 817. The Plaintiff does not directly challenge the Appeals Council's denial of his request for review, but instead challenges the final decision of the Commissioner. Br. for Plaintiff, pp.12-19; *Mills v. Apfel*, 244 F.3d 1, 4-5 (1st Cir. 2001). Since the Plaintiff was represented by counsel at his hearing before the ALJ, *Reefer* is wholly inapplicable to this case. R. p. 30. Therefore, the evidence that was not presented to the ALJ in the first instance cannot be considered by this Court absent a showing by the Plaintiff that he had "good cause" for not presenting it to the ALJ.

The hearing transcript reveals that the ALJ gave the Plaintiff extra time to submit medical documentation that was not yet available. R. p. 37. While it is apparent that the Plaintiff experienced difficulty in getting access to some documents, it is likewise apparent that the ALJ was more than willing to accommodate his need for additional time. R. pp. 34-37. The record indicates that medical documents from Cambria County Mental Health/Mental Retardation dated December 16, 2003, were submitted to the ALJ subsequent to the hearing. R. pp. 4, 273-275. Additional records covering the period from January 9, 2004, to February 6, 2004, were submitted to the Appeals Council after the ALJ's decision had already been issued. R. pp. 5, 9, 276-282. In his brief, the Plaintiff makes no express assertion that he had good cause for not submitting the later documents to the ALJ, opting instead to simply include these documents in his Summary of Medical Evidence and to assume that they must be considered by this Court. Br. for Plaintiff p. 9. Under *Matthews*, this Court cannot consider such evidence unless the claimant demonstrates that he had good cause for not previously submitting it to the ALJ. Since the Plaintiff fails to demonstrate good cause, the Court agrees with the

6

Commissioner's position that the evidence in question cannot be factored into the determination as to whether the Commissioner's final decision denying benefits to the Plaintiff is supported by substantial evidence. Br. for Defendant pp. 13-14.

The Commissioner also points out that the documents from Dr. Cassone and Cambria County Mental Health/Mental Retardation postdated March 31, 2003. Br. for Defendant p. 13. Notwithstanding this fact, however, the Court will consider the documents that were properly presented to the ALJ, including those which postdated the expiration of the Plaintiff's insured eligibility status. As the Court of Appeals explained in *Rocco v. Heckler*, 826 F.2d 1348 (3d Cir. 1987), medical documentation of events occurring after the expiration of a claimant's insured eligibility status "may be helpful in evaluating the claimant's actual condition before the end" of his period of coverage. *Rocco*, 826 F.2d at 1351.

The ALJ determined that Dr. Cassone's August 21, 2003 finding that the Plaintiff had a GAF rating of only 45 was entitled to little weight because it represented "only a snap shot view of the claimant's functioning and [was] not supported by the more detailed evaluation" dated December 16, 2003. R. pp. 22, 261, 273-274.[3] In the December evaluation, Dr. Cassone reported that the Plaintiff was only moderately limited in his ability to understand and remember both simple and detailed instructions, carry out both simple and detailed instructions, make judgments regarding simple work-related matters, interact appropriately with the public, supervisors and co-workers, and respond appropriately to work pressures and changes in usual and routine work settings. R. pp. 273-274. In light of this revealing report from the Plaintiff's treating psychiatrist, it was permissible for the ALJ to accord little weight to the Plaintiff's low GAF numbers.

The Plaintiff contends that the ALJ wrongfully relied on the findings of Dr. Steven Pacella, a psychologist. Br. for Plaintiff p. 15. The Plaintiff objects to the supposed "diagnosis regarding physical conditions" made by Dr. Pacella, who was not a medical doctor. Br. for Plaintiff p. 15. This

---

[3] Given this determination by the ALJ, it is highly unlikely that the 2004 medical reports from Cambria County Mental Health/Mental Retardation would have made a difference had they been presented to the ALJ. The February 2004, report listed the Plaintiff's GAF level at 50, which was higher than the earlier report that was expressly discounted by the ALJ. R. pp. 22, 277. Since the August 2003, and December 2003, reports were closer in time to the expiration of the Plaintiff's insured eligibility status, they were of greater probative value than the 2004 reports.

assertion, however, is simply inaccurate. On February 22, 2003, Dr. Pacella recorded the following observation: "Speaking *strictly from the psychological perspective*, Mr. Gailey remains able to work within a schedule, attend to a task and sustain a consistent, competitive routine–were he so disposed and *assuming no legitimate physical contraindication*." R. p. 225, (emphasis added). Dr. Pacella clearly intended to limit the scope of his evaluation, and the results thereof, to the Plaintiff's psychological status. Although the ALJ afforded great weight in his decision to Dr. Pacella's opinion, he assured the Plaintiff's attorney at the hearing that Dr. Pacella's opinion would only be weighed to the extent that it was within his area of competence. R. pp. 19, 34-36. This assurance was given when the ALJ admitted Dr. Pacella's report into evidence despite the Plaintiff's objection. R. pp. 34-36. The Plaintiff provides no reason why this Court should question the credibility of the ALJ's assurance. To the extent that the Plaintiff argues that Dr. Pacella's findings were insufficient to outweigh the low GAF ratings found by Dr. Cassone, the Court has already determined that Dr. Cassone's own findings contradicted those ratings. In the event of "such conflicting and internally contradictory evidence," the ALJ is free to conclude that the opinion of the treating physician is not controlling. *Jones v. Sullivan*, 954 F. 2d 125, 129 (3d Cir. 1991). Similarly, the notes of Sara Blasker, the Plaintiff's therapist, were not as definitive as the Plaintiff alleges. Br. for Plaintiff pp. 6-7. Although Ms. Blasker reported that the Plaintiff's progress was minimal, she nevertheless determined that his prognosis was good. R. p. 192.

The Plaintiff relies on a Medical Source Statement of Claimant's Ability to Perform Work-Related Physical Activities form completed by Dr. William C. Go on July 11, 2001. R. pp. 269-270. After examining the Plaintiff, Dr. Go noted that the Plaintiff could sit for only two hours, and that he could stand or walk for only one or two hours, in an eight-hour workday. R. p. 269. Nevertheless, in a report dictated just five days later, Dr. Go concluded that the Plaintiff was not disabled, and that he could perform job-related duties that did not involve bending, stooping, or lifting objects weighing more than twenty pounds. R. p. 189. The Plaintiff contends that, according to Dr. Go, he was capable of working for a total of four hours per day. Br. for Plaintiff p. 6. The ALJ construed Dr. Go's findings differently, concluding that "Dr. Go was not giving an eight-hour cumulative total," but rather "an

8

estimate of sustained duration before a position adjustment would be required." R. pp. 21-22. The ALJ's interpretation of Dr. Go's note was reasonable, given the fact that Dr. Go specifically stated that he found the Plaintiff to be capable of "gainful employment." R. p. 189. As Judge Benitz noted in his decision of September 27, 2002, an opinion that the Plaintiff was only able to work for a total of four hours per day was incompatible with Dr. Go's own determination that the Plaintiff was capable of substantial gainful activity. R. p. 88.

The Plaintiff also relies on notes recorded by Dr. Christopher Post, who reported that the Plaintiff suffered from "chronic cervical spine and lumbosacral pain." Br. for Plaintiff p. 7; R. 197-199. He also points out that Dr. Gilfred C. Ubina, an examining physician from Pennsylvania's Bureau of Disability Determination, noted that Plaintiff suffered from a herniated disc of the neck and back, and that he was unable to flex his spine due to pain. R. pp. 219-221. The fact that he was impaired, however, does not mean that he was disabled for purposes of 42 U.S.C. § 423(d)(1)(A), (2)(A). As the Court of Appeals explained in *Kuzmin v. Schweiker*, 714 F.2d 1233 (3d Cir. 1983), there is "a distinction between the issue of the existence of a medical condition and the issue of the existence of statutory disability." *Kuzmin*, 714 F.2d at 1237. In a letter dated May 5, 2000, Dr. Post indicated that the Plaintiff was unable to work. R. p. 271. Nonetheless, that letter was written more than two years before the period of time in question. Dr. Post, in that same letter, left open the possibility that the Plaintiff could return to work in the future. R. p. 271. The Plaintiff makes no express assertion that his impairments met or medically equaled an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Therefore, the existence of a medical condition alone was insufficient to establish the onset of statutory disability in this case. 20 C.F.R. § 404.1520(e).

The ALJ's determination that the Plaintiff was not statutorily disabled is supported by the findings of both Dr. Edward Jones, a state agency psychologist, and Dr. Frank Bryan, a state agency physician. Br. for Plaintiff p. 6; R. pp. 228-251. Dr. Jones concluded that the Plaintiff had only mild difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace. R. p. 238. It was further determined that the Plaintiff had experienced no restrictions on his activities of daily living and no episodes of decompensation. R. p. 238. Dr. Bryan opined that the Plaintiff's

9

claims about restrictions on his activities of daily living suggested that he had been engaging in "symptom magnification." R. p. 249. According to Dr. Bryan, the Plaintiff's "subjective complaints regarding the severity of limitations caused by his impairments" were "not fully credible." R. p. 249.

Finally, the ALJ was justified in finding the Plaintiff's testimony to be "not totally credible." R. p. 20. At the hearing, the Plaintiff testified that he had not hunted within the previous four or five years. R. p. 47. The ALJ pressed him on this question. R. pp. 47-48. Apparently, the ALJ was aware of the fact that the Plaintiff's medical records indicated that he had been out hunting during the period of time at issue in this case. For instance, Dr. Ubina's examination report indicated that the Plaintiff was still an active hunter as of January 22, 2003. R. p. 220.

Under these circumstances, it is clear that the decision of the Commissioner is supported by substantial evidence. This Court has no mandate to substitute its own credibility determinations for those made by the ALJ. Congress has mandated that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g). Since the Commissioner's findings of fact in the instant matter are supported by substantial evidence, they are conclusive in this case.

The Plaintiff makes two additional arguments in support of his motion for summary judgment, neither of which is persuasive. First, he argues that the ALJ erred in his evaluation of the Plaintiff's subjective complaints by failing to properly apply 20 C.F.R. § 404.1529 and Social Security Ruling 96-7p. Br. for Plaintiff pp. 16-17. Specifically, the Plaintiff contends that the ALJ ignored the Plaintiff's testimony and Dr. Cassone's findings in determining that the Plaintiff's daily activities were only moderately limited. Br. for Plaintiff pp. 16-17. This assertion is inexplicable in light of the fact that Dr. Cassone *himself* found only moderate limitations on the Plaintiff's ability to engage in work-related activities. R. pp. 273-274.

The ruling relied upon by the Plaintiff states that "the adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements if a disability determination or decision that is fully favorable to the individual cannot be made solely on the basis of objective

10


medical evidence." 61 F.R. 34483, 34484. For the reasons discussed earlier, the Court is convinced that the ALJ adequately addressed the Plaintiff's subjective complaints. R. pp. 18-19. The ALJ made the specific determination that the Plaintiff's "testimony concerning his impairments and their impact on his ability to work" were "not totally credible." R. p. 20. In so finding, the ALJ gave adequate consideration to the Plaintiff's description of his daily activities, the objective medical evidence in the record, and the opinions of the various medical professionals regarding the severity of the Plaintiff's medical condition and functional limitations. R. p. 20.

The Plaintiff's final argument is that the ALJ failed to assess the Plaintiff's residual functional capacity on a function-by-function basis pursuant to Social Security Ruling 96-8p. Br. for Plaintiff pp. 17-18. This ruling requires that each exertional and non-exertional limitation be considered separately in determining the residual functional capacity of a claimant. 61 F.R. 34474, 34477. Contrary to the contentions of the Plaintiff, the ALJ clearly considered these limitations separately.

At the hearing, the ALJ asked Mr. Heckman to assume that a hypothetical individual with the Plaintiff's past education, training, and work experience was limited to the following: a light range of work; occasional postural maneuvers, such as balancing, stooping, kneeling, crouching, crawling and climbing; simple, routine, repetitive tasks, not performed in a production or quota-based environment; making only simple work-related decisions and having relatively few workplace changes; and occasional interaction with supervisors, co-workers, and members of the general public. R. p. 61.[4] Mr. Heckman testified that such an individual could perform light exertional work as a routing clerk, cleaner/housekeeper, or patch worker. R. p. 62. Mr. Heckman further testified that such a person could perform sedentary work as a product inspector, nut sorter, or hand packer. R. p. 62. In response to a question by the ALJ asking the Plaintiff whether he wanted to add to his testimony regarding his medical problems, the Plaintiff mentioned that he suffered from bursitis in his shoulders. R. p. 63. The ALJ then asked Mr. Heckman whether any of the job possibilities mentioned before would be precluded if the hypothetical individual was also limited to occasional pushing and pulling with both

---

[4]At the time of the ALJ's decision, the Plaintiff was "a 48-year old individual with a high school equivalency diploma, one year of additional education at the college level and past relevant work [experience] as a carpenter and a welder." R. p. 17.

11

upper extremities, including the operation of hand levers. R. p. 64. Given that additional limitation, Mr. Heckman testified that such a person could not work as a cleaner/housekeeper, patch worker, or hand packer. R. pp. 64-65. Nevertheless, according to Mr. Heckman, a person so limited would be able to work as a routing clerk, a coupon redemption clerk, a surveillance system monitor, or an ampoule sealer. R. pp. 64-65.

When he determined the Plaintiff's residual functional capacity, the ALJ included the additional limitation that he had added to the hypothetical question posed to the vocational expert. R. p. 24. It is apparent from the hearing transcript that the ALJ was aware of the need to add an additional exertional limitation in order to compensate for the Plaintiff's shoulder pain. R. pp. 63-67. Furthermore, when he evaluated the conclusions of Dr. Go, the ALJ noted that while the "lifting requirements" were supported by objective medical evidence, the "standing, walking and sitting requirements" were not so supported. R. p. 21. These portions of the record illustrate the ALJ's awareness of his obligation to give separate consideration to each exertional and non-exertional limitation on the Plaintiff's ability to engage in substantial gainful activity.

The Court is convinced that the ALJ complied with Social Security Rulings 96-7p and 96-8p, thereby accounting for the Plaintiff's subjective complaints and functional limitations. This compliance is verified by reference to both the transcript of the hearing and the decision of the ALJ. Since the ALJ's hypothetical question to Mr. Heckman included all of the Plaintiff's functional limitations, Mr. Heckman's testimony was reliable. *Rutherford v. Barnhart*, 399 F. 3d 546, 554-555 (3d Cir. 2005).

Accordingly, the decision of the Commissioner of Social Security must be affirmed. An appropriate Order follows.

12

AND NOW, this 12th day of June, 2006, this matter coming before the Court on the parties' cross-motions for summary judgment, IT IS HEREBY ORDERED THAT: 1) the Plaintiff's Motion for Summary Judgment (Document No. 7) is DENIED; and 2) the Defendant's Motion for Summary Judgment (Document No. 10) is GRANTED.

BY THE COURT:

**KIM R. GIBSON,**
**UNITED STATES DISTRICT JUDGE**

cc:     John D. Gibson, Esq.
        John J. Valkovci, Jr. AUSA

13